**2019 UT App 208**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF E.R.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

J.R.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20190184-CA
Filed December 19, 2019

Fourth District Juvenile Court, Provo Department
The Honorable F. Richards Smith
No. 1012098

Margaret P. Lindsay, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion, in which JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1      J.R. (Mother) appeals the juvenile court's termination of her parental rights to E.R. We affirm.

BACKGROUND

¶2      The Division of Child and Family Services (DCFS) has been involved with Mother and her family on and off since 2008. Between 2008 and Mother's termination trial in 2018, DCFS

made multiple supported findings of environmental neglect against both Mother and her husband (Father) with respect to their three children, as well as findings of emotional maltreatment, emotional abuse, domestic-violence abuse, and physical abuse against Father.

¶3     E.R. is the youngest of Mother's three children and was eleven years old at the time of Mother's termination trial. E.R. "has been diagnosed with behavioral and emotional dysregulation, secondary post-traumatic stress disorder (PTSD), mood disorder and Asperger's." E.R. has severe behavioral problems, including aggression and suicidal ideation.

¶4     Mother and Father divorced in 2013. "The current case was initiated in January 2016 when DCFS supported a finding of dependency against the parents as to" E.R. after he was hospitalized twice in the course of a month. The Utah State Hospital accepted E.R. for admission but eventually withdrew its placement offer after Father refused to consent to his hospitalization. Subsequently, DCFS sought and obtained a warrant to take E.R. into protective custody. The juvenile court awarded legal custody and guardianship of E.R. to DCFS and set concurrent goals for E.R. of reunification with Mother or permanent custody and guardianship with a relative.[1] DCFS first placed E.R. at the Utah State Hospital and later placed him with a foster family. On November 30, 2016, the court terminated reunification services after finding that neither parent was in substantial compliance with the reunification plan. The court then "set a primary goal of adoption with a concurrent goal of permanent custody and guardianship." On September 28, 2017, the State filed a petition to terminate Mother's and Father's

---

1. E.R.'s two older siblings continued to reside with Mother until they were removed in October 2016 as a result of several incidents of abuse and neglect by Mother.

parental rights, which was later bifurcated. The court terminated Father's parental rights following a trial in March 2018.

¶5     Mother's termination trial was held in August and November 2018, following which the court terminated Mother's parental rights. The court found that Mother had made "some progress" in therapy but that she "continues to minimize her own issues and the role she played in the difficulties in her home." The court attributed her progress "partly to her years of treatment, and partly to the fact that she has not been parenting [E.R.] for the last three years." It further found that although E.R. and Mother are bonded and have had appropriate contact in their bi-weekly visits, Mother "does not possess the skills needed to effectively parent [E.R.] over time." The court found grounds for termination based on its determination that Mother is "an unfit or incompetent parent," that there had "been a failure of parental adjustment," and that Mother had not remedied the circumstances causing E.R. to be in an out-of-home placement and was unlikely to be capable of exercising proper parental care in the future. *See* Utah Code Ann. § 78A-6-507(1)(c)–(e) (LexisNexis 2018).

¶6     The court found that E.R. had made "significant progress" through the "intense treatment he received at the State Hospital," "ongoing treatment," and the skills and efforts of his foster family. It found that E.R. was "bonded with his mother, and desires to have ongoing contact with her," and that the "foster parents are supportive of appropriate ongoing contact between [E.R.] and his now-adult siblings, and between [E.R.] and his mother, and have encouraged such contact." The court believed that "[i]f the foster parents were to adopt [E.R.,] they would continue to support that contact as long as it is healthy for [E.R.] and in his best interest."

¶7     The court found that it was in E.R.'s best interest to be adopted by the foster parents. It observed that E.R. "has a

particular aversion to anything court related" and that court proceedings cause him significant distress. For this reason, the court determined that E.R. "has a significant need for stability in his placement" and that awarding permanent custody and guardianship to the foster parents, rather than terminating Mother's rights and permitting him to be adopted, "would be detrimental to [him], and deny him the sense of permanency and stability that he so desperately needs." The court therefore determined that terminating Mother's parental rights was strictly necessary to further E.R.'s best interest. Mother now appeals the court's termination decision.

ISSUE AND STANDARD OF REVIEW

¶8      "The ultimate decision about whether to terminate a parent's rights presents a mixed question of law and fact." *In re B.T.B.*, 2018 UT App 157, ¶ 8, 436 P.3d 206 (quotation simplified), *cert. granted*, 440 P.3d 692 (Utah 2019). We review the court's factual findings for clear error and its legal conclusions for correctness, "affording the court some discretion in applying the law to the facts." *Id.* (quotation simplified). Ultimately, due to "the factually intense nature" of a termination decision, "the juvenile court's decision should be afforded a high degree of deference," and we should overturn it only if the result is "against the clear weight of the evidence" or leaves us "with a firm and definite conviction that a mistake has been made."[2] *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (quotation simplified).

---

2. Mother challenges this standard of review, asserting that appellate courts should take a more active role in examining the correctness of a juvenile court's decision regarding termination of parental rights in light of the important constitutional rights involved. She asserts that the "standard of review that has developed over time in termination of parental rights cases is so

(continued…)

ANALYSIS

¶9 Mother argues that the juvenile court exceeded its discretion in terminating her parental rights. In assessing whether termination of parental rights is appropriate, a court must engage in a "two-part test." *In re B.T.B.*, 2018 UT App 157, ¶ 13, 436 P.3d 206, *cert. granted*, 440 P.3d 692 (Utah 2019). "First, a trial court must find that one or more of the statutory grounds for termination are present," and second, "a trial court must find

---

(…continued)

deferential to the decision of the juvenile courts that . . . no longer do these decisions concern mixed questions" and that the standard of review "takes any responsibility and power in these mixed questions of law and fact away from the appellate court and affords total power and discretion to the individual juvenile courts around the State." Mother urges us to reexamine the correct "spectrum of deference" for parental termination cases in light of the factors outlined by our supreme court in *State v. Levin*, 2006 UT 50, 144 P.3d 1096. *Id.* ¶¶ 25, 28.

However, we are not in a position to overturn the supreme court's articulated standard of review, *see State v. Tenorio*, 2007 UT App 92, ¶ 9, 156 P.3d 854 ("Vertical stare decisis compels a court to follow strictly the decisions rendered by a higher court." (quotation simplified)), which instructs us to afford the juvenile court's termination decision "a high degree of deference," *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. Moreover, we have previously rejected the assertion that due process requires a more stringent standard of review in termination cases, *In re S.Y.T.*, 2011 UT App 407, ¶¶ 31–37, 267 P.3d 930, reaffirming the principle that the juvenile court's superior opportunity to make witness-credibility determinations entitles it to a high degree of deference and that we should overturn termination decisions only "if the clear weight of that evidence is against the juvenile court's determination," *id.* ¶¶ 36–37.

that termination of the parent's rights is in the best interests of the child." *Id.* (quotation simplified). Mother does not contest the juvenile court's determination that grounds existed to support termination, but she maintains that termination was not in E.R.'s best interest.

¶10 "[A] parent's right to raise her child is a fundamental right, and although courts must view the 'best interest' element from the perspective of the child, in so doing courts should not forget the constitutional dimension of the parental rights on the other side of the ledger." *Id.* ¶ 55. "[A]s part of the 'best interest' analysis required by the second element of the two-part test, along with all of the other facts and circumstances relevant to the case, trial courts should analyze whether termination of a child's parent's rights is 'strictly necessary.'" *Id.* ¶ 50; *see also* Utah Code Ann. § 78A-6-507 (LexisNexis 2018) ("Subject to the protections and requirements of Section 78A-6-503, *and if the court finds strictly necessary*, the court may terminate all parental rights with respect to a parent if the court finds any one of the following [statutory factors] . . . ." (emphasis added)). An assessment of whether termination is strictly necessary "requires courts to explore whether other feasible options exist that could address the specific problems or issues facing the family, short of imposing the ultimate remedy of terminating the parent's rights." *In re B.T.B.*, 2018 UT App 157, ¶ 55. "[I]f there is a practical way to keep parents involved in the children's lives that is not contrary to the children's best interests, a court should seriously consider such an option." *Id.* "After this consideration, if a juvenile court determines that no such alternatives are available or articulates supported reasons for rejecting alternatives that do exist, such findings are entitled to deference on appeal." *In re C.T.*, 2018 UT App 233, ¶ 16, 438 P.3d 100.

¶11 Mother asserts that the court did not adequately explore the feasibility of granting permanent custody and guardianship to the foster parents while permitting her to continue having

visitation rights. First, she points to the court's observation that "the only issue before the Court in this matter is whether parental rights should be terminated" and that "[q]uestions of . . . potential permanent custody and guardianship . . . are not even before the Court at this time." Mother contends that this statement demonstrates that the juvenile court misunderstood its duty to examine the feasibility of alternatives to termination. However, in context, it is clear that the court was merely explaining its inability to make a final ruling on other options at the time of the termination trial. The court further clarified, "[C]ertainly if parental rights are not terminated, it does not mean an automatic change in status. In fact, all it means is status quo until further decision by the Court. . . . I just didn't want anyone to have false expectations regarding the outcome of this trial either way." And the court's written findings ultimately did address the feasibility of alternatives in the context of its best interest analysis.

¶12 The court found that E.R. is an autistic child with significant behavioral issues. He "has been diagnosed with behavioral and emotional dysregulation, secondary post-traumatic stress disorder (PTSD), mood disorder and Asperger's." His behavioral issues require his foster parents to "respond to [his] emotional dysregulation . . . , sometimes multiple times a day, and help him work through it, get back to rational thinking, and avoid escalation." The court found that E.R. was "weary" of "DCFS and court involvement" and that "[p]articipation in court proceedings of any kind causes him distress, to the point that he doesn't even want to be aware of when court hearings will occur." The court found that E.R. "needs the stability and peace that would come with closure of the DCFS case and a permanent end to court involvement." In light of E.R.'s specific needs and his aversion to court involvement, the court concluded, "[E.R.] has a significant need for stability in his placement. He needs to know where he's going to stay, and who will be his permanent caretaker." The

court further concluded that "[a]warding permanent custody and guardianship of [E.R.] to his foster parents . . . would leave open the specter of repeated court involvement in the form of orders to show cause, motions, hearings, and so forth, related to visitation compliance issues, visitation modification requests, etc." and that this would be "detrimental to [E.R.], and deny him the sense of permanency and stability that he so desperately needs."

¶13 Mother challenges these findings, asserting that E.R. would not need to be told about future court proceedings and that it was by no means certain that further court proceedings would actually occur once an order of guardianship and visitation was entered. But Mother's challenges do not demonstrate that the juvenile court's findings were against the clear weight of the evidence. Having examined the specific circumstances of this case and the individual needs of E.R., the court concluded that even the "specter" of future court involvement was detrimental to E.R. And even if a concerted effort were made to shield E.R. from knowledge about court dates, there is no guarantee that such efforts would be successful, especially if a contentious order to show cause or petition to modify were filed in the future. *See In re J.P.*, 921 P.2d 1012, 1019 (Utah Ct. App. 1996) (discussing the nature of permanent guardianship and its lack of finality).

¶14 Although we have previously made it clear that the need for permanency "does not, by itself, establish that termination is in a particular child's best interest," *In re D.R.A.*, 2011 UT App 397, ¶ 14, 266 P.3d 844, the court's emphasis of E.R.'s need for permanency in this case was reasonable. The court did not rely on the general desirability of permanency but on E.R.'s personal need for permanency in light of his significant psychological issues and his particular aversion to anything court-related. These articulated reasons for rejecting the feasibility of permanent guardianship were supported by the evidence and

are entitled to deference. *See In re C.T.*, 2018 UT App 233, ¶ 16. Thus, we decline to disturb the juvenile court's finding that termination of Mother's parental rights was in E.R.'s best interest.

CONCLUSION

¶15    The juvenile court adequately examined the feasibility of alternatives to terminating Mother's parental rights in assessing E.R.'s best interest, and its finding that termination was strictly necessary was not against the clear weight of the evidence. Accordingly, we affirm the juvenile court's termination of Mother's parental rights.

_____