**2021 UT 36**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

State of Utah, in the interest of E.R.,
a person under eighteen years of age.

J.R.,
*Petitioner,*

*v.*

STATE OF UTAH,
*Respondent.*

No. 20200163
Heard April 8, 2021
Filed July 29, 2021

On Certiorari to the Utah Court of Appeals

Fourth District, Provo
The Honorable F. Richards Smith
No. 1012098

Attorneys:

Margaret P. Lindsay, Provo, for petitioner

Sean D. Reyes, Att'y Gen., Carol L. C. Verdoia, John M. Peterson,
Asst. Att'y Gens., Salt Lake City, for respondent

Martha Pierce, Salt Lake City, Guardian ad Litem for E.R.

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 This case arises from the termination of a mother's
parental rights. The juvenile court removed E.R. from his mother's
custody in January 2016, after the Division of Child and Family
Services (DCFS) supported a finding of dependency against the
mother. The court first set a primary permanency goal of
reunification with the mother, with a concurrent goal of

permanent custody and guardianship with a relative. After several months of receiving services from DCFS, however, the mother failed to come into substantial compliance with the reunification plan. In November 2016, the juvenile court "terminated reunification services" and "set a primary goal of adoption with a concurrent goal of permanent custody and guardianship."

¶2   A year later the state petitioned for termination of the mother's parental rights. At that point, the court found there were statutory grounds to terminate and determined that it was in E.R.'s best interest to do so. The court concluded that E.R. "has a particular aversion to anything court related" and that he "has a significant need for stability in his placement." And with that in mind, the court determined that it was "strictly necessary to terminate" the mother's parental rights to provide E.R. with "true permanency through adoption and so that all court proceedings come to an end."

¶3   The mother appealed the termination, asserting that the juvenile court had "exceeded its discretion in terminating her parental rights" and that "termination was not in E.R.'s best interest." *State ex rel. E.R.*, 2019 UT App 208, ¶ 9, 457 P.3d 389; *see* UTAH CODE § 78A-6-507 (setting forth grounds for termination and providing that termination is permitted if it is "strictly necessary" "from the child's point of view").[1] In the mother's view, the juvenile court had failed to give adequate consideration to reasonable alternatives to termination, as required for the "strictly necessary" inquiry. *Id.* ¶¶ 10–11; *see also In re B.T.B.*, 2020 UT 60, ¶ 76, 472 P.3d 827 (stating that "a court must specifically address whether termination is strictly necessary to promote the child's welfare and best interest"). And the mother sought reversal on that basis.

¶4   The court of appeals affirmed the decision of the juvenile court. Applying the standard of review set forth in *State ex rel. B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435, the court of appeals stated that "the juvenile court's decision should be afforded a high

---

[1] The mother only appealed the juvenile court's best interest determination. She did not contest the determination that grounds existed to support termination. *State ex rel. E.R.*, 2019 UT App 208, ¶ 9, 457 P.3d 389.

degree of deference" and concluded that the result could be overturned only if it is "against the clear weight of the evidence" or leaves the appellate court "with a firm and definite conviction that a mistake has been made." *E.R.*, 2019 UT App 208, ¶ 8 (quoting *B.R.*, 2007 UT 82, ¶ 12). The court determined that the mother had failed to "demonstrate that the juvenile court's findings were against the clear weight of the evidence." *Id.* ¶ 13. It concluded that the juvenile court had "examined the specific circumstances of this case and the individual needs of E.R." when making its decision and that its best interest determination was adequate. *Id.* And the court of appeals thus concluded that the "finding that termination was strictly necessary was not against the clear weight of the evidence." *Id.* ¶ 15.

¶5 The mother filed a petition for certiorari, which we granted. Her briefs filed in our court are aimed at challenging the propriety of the standard of review applied by the court of appeals. She first asks us to rule that the deferential standard of review laid out in *B.R.* applies only to determinations of parental fitness in termination proceedings, not to best interest determinations. If we conclude that *B.R.* does apply to best interest determinations, she next asserts that the standard is too deferential, and should be replaced with a non-deferential, *de novo* standard of review.

¶6 We affirm. First, we hold that the court of appeals correctly applied the *B.R.* standard of review to the juvenile court's best interest determination. Second, we reject the mother's request that we replace the *B.R.* standard with a *de novo* standard of review. Third, we acknowledge some points of imprecision and possible confusion in *B.R.*, and clarify that the governing standard is the same deferential standard that applies to any fact-intensive decision of any lower court—such determinations are upheld unless they are against the "clear weight of the evidence."

I

¶7 In *State ex rel. B.R.*, this court stated that a juvenile court's termination decision "should be afforded a high degree of deference." 2007 UT 82, ¶ 12, 171 P.3d 435. We noted that the question "[w]hether a parent's rights should be terminated presents a mixed question of law and fact." *Id.* And we held that an appellate court may thus overturn the juvenile court's decision on termination only where it is "against the clear weight of the evidence or leave[s] the appellate court with a firm and definite conviction that a mistake has been made." *Id.* (alteration in

original, citation and internal quotation marks omitted). Such a decision may be overturned, in other words, "only if it either failed to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." *Id.*

¶8 The mother contends that only determinations of parental fitness, and not determinations of a child's best interest, are reviewed under the standard set forth in *B.R.*[2] She cites language from *B.R.* stating that "the legal standard of unfitness is the ultimate question." *Id.* And she accordingly insists that *B.R.* concerned only a parental fitness determination, not a best interest determination. *See id.*

¶9 This is a misread of our opinion in *B.R.* Our opinion addressed the larger question of what level of review to apply to a juvenile court's analysis of "[w]hether a parent's rights should be terminated." *Id.* And parental termination implicates not just parental fitness but also the child's best interest—a point made clear by subsequent precedent.

¶10 In *State ex rel. A.C.M.*, we reiterated the *B.R.* standard and applied it to a juvenile court's decision to terminate a father's rights. We thus applied this standard to two questions—to whether the juvenile court had "sufficient grounds to terminate his rights," and to whether it had failed to consider the child's "best interests." 2009 UT 30, ¶ 8, 221 P.3d 185. In considering these questions, we stated that "[w]e afford great deference to the juvenile court's findings of fact and overturn the result only if the facts are against the clear weight of the evidence." *Id.*

¶11 Our recent decision in *In re G.D.* is along the same lines. There we stated that "[w]hen reviewing a fact-intensive mixed question of fact and law, such as whether a particular placement serves a child's best interests, . . . [a]n appellate court must not

---

[2] We have commonly "referenced the termination" of parental rights as "a two-step inquiry." *In re B.T.B.*, 2020 UT 60, ¶ 46, 472 P.3d 827. First, the juvenile court "must find grounds for termination under Utah Code section 78A-6-507." *Id.* (citation omitted). And second, the court must find that "termination of the parent's rights is in the best interests of the child." *Id.* (citation omitted). Here, the mother has appealed only the juvenile court's best interest determination. *Supra* ¶ 3 n.1.

overturn the trial court's decision unless it is against the clear weight of the evidence." *In re G.D.*, 2021 UT 19, ¶ 72 n.46, __ P.3d __.

¶12 These cases foreclose the mother's first argument. The standard of review established in *B.R.* applies to all aspects of the juvenile court's termination of parental rights determination, and not just to the parental fitness determination. We have routinely applied the standard to both parental fitness and best interest determinations. The court of appeals was thus correct to apply the *B.R.* standard to the juvenile court's best interest determination.

II

¶13 The mother asserts that the standard we established in *B.R.* is too deferential for a best interest determination. But the deferential standard established in *B.R.* is in line with the standard of review we apply to similar fact-intensive decisions. And the mother has not identified a basis for repudiation of this deferential standard in favor of the *de novo* standard she asks us to apply.

¶14 The appropriate standard of review for a lower court's decision is dependent upon the "nature of the issue." *In re Adoption of Baby B.*, 2012 UT 35, ¶ 42, 308 P.3d 382. We apply differing standards of review to findings of fact, conclusions of law, and determinations of mixed questions of law and fact.

¶15 Factual determinations are accorded a high degree of deference. This is because "a lower court often has a comparative advantage in its firsthand access to factual evidence." *In re United Effort Plan Trust*, 2013 UT 5, ¶ 17, 296 P.3d 742 (citation and internal quotation marks omitted). And as factual issues "are unique to each case," there is "no particular benefit in establishing settled appellate precedent on issues of fact." *Id.* (citation omitted). With this in mind, we review determinations of fact with a "highly deferential standard," overturning the lower court "only when clearly erroneous." *Id.* (citation omitted).

¶16 Our review of conclusions of law is at the other end of the spectrum. We afford "[n]o deference . . . to the lower court's analysis of abstract legal questions." *Id.* ¶ 18 (citation omitted). "[S]ettled appellate precedent is of crucial importance in establishing a clear, uniform body of law." *Id.* (citation omitted). And appellate courts have comparative advantages in establishing such precedent. We apply a non-deferential *de novo* standard to questions of law for that reason.

¶17 A best interest determination involves neither a pure finding of fact nor an abstract conclusion of law. This is a mixed determination of law and fact—in which the abstract law is applied to a given set of facts.

¶18 The standard of review for mixed questions "depends on the nature of the issue." *Baby B.*, 2012 UT 35, ¶ 42. "Law-like mixed questions are reviewed de novo, while fact-like mixed questions are reviewed deferentially." *Sawyer v. Dep't of Workforce Servs.*, 2015 UT 33, ¶ 11, 345 P.3d 1253. To determine "whether a mixed question should be deemed law-like or fact-like, we evaluate the 'marginal costs and benefits' of conducting either a searching de novo review or a deferential review of a lower tribunal's resolution of the mixed question." *Id.* ¶ 12 (quoting *Baby B.*, 2012 UT 35, ¶ 42).

¶19 *De novo* review of mixed questions is appropriate "where a fresh appellate reconsideration of the issues present[s] little downside and significant upside." *Baby B.*, 2012 UT 35, ¶ 44. Issues that are "law-like" are matters that "lend[] themselves to consistent resolution by uniform precedent." *Id.* Appellate courts are in a preferred position on such issues. They can establish a uniform body of precedent establishing "consistent rule[s]" that litigants and lower courts can rely on. *Id.* And a need to establish such rules cuts against a standard of deference to lower courts.

¶20 Other mixed questions do "not lend [themselves] to consistent resolution by a uniform body of appellate precedent" because the factual scenarios presented are "so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out." *Id.* ¶¶ 42–43. On these issues, "the trial court is in a superior position" to make a determination and deference is appropriate. *Id.* ¶ 42.

¶21 Our cases identify a "cost-benefit" basis for distinguishing "law-like" and "fact-like" mixed determinations through the lens of a three-factor test laid out in *State v. Levin*. *See Sawyer*, 2015 UT 33, ¶ 12. This test considers:

> (1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on facts observed by the trial judge, such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to

appellate courts; and (3) other policy reasons that weigh for or against granting discretion to trial courts.

*State v. Levin*, 2006 UT 50, ¶ 25, 144 P.3d 1096 (citation and internal quotation marks omitted).

¶22 Under this test, a juvenile court's best interest determination involves a "fact-like" mixed question subject to deferential review. First, this is a "factually intense . . . inquiry" dependent on the unique circumstances and needs of each child. *State ex rel. B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. Each case presents its own complexity and variety. And these considerations stand in the way of appellate development of categorical rules in this field.

¶23 Second, the juvenile court has a superior perspective in light of its view of the demeanor of both parents and children. We have "previously noted that a party's demeanor" is a factor that "may be probative in a best interest analysis." *State ex rel. T.E.*, 2011 UT 51, ¶ 44, 266 P.3d 739. Such evidence "may be probative of a parent's credibility, a parent's attitude toward his or her child, and a parent's attitude in fulfilling parental obligations." *Id.* And again this cuts in favor of a standard of deferential review.

¶24 The mother's principal counter is her assertion that "policy reasons" are sufficient to outweigh the above. She notes that there are "fundamental interests at stake" in a best interest determination. And she cites recent amendments to the Utah Code that in her view indicate that "the standard of review as to whether termination is in the best interest of the child should be rebalanced between juvenile and appellate courts."

¶25 We see no basis in the cited authority for an alteration of our longstanding standard of deference to best interest determinations. A parent certainly has a "fundamental right, protected by the Constitution, to sustain his relationship with his child." *In re J.P.*, 648 P.2d 1364, 1372 (Utah 1982) (citation omitted). But there is no hard-and-fast rule that any and all determinations affecting a party's fundamental rights are subject to searching *de novo* review. And in our view the best interest determination is properly subject to deferential review for reasons set forth above.

¶26 The mother has identified no persuasive ground for her request that we overrule the standard set forth in *B.R.* She has made little or no effort to justify a reversal of course as a matter of *stare decisis*. *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 22, 345 P.3d 553 (setting forth factors for consideration in deciding whether to

overrule our precedent). And we decline her request and reaffirm the standard set forth in *B.R.* for reasons set forth above.

III

¶27 Although we reinforce *B.R.*, we also take this occasion to refine it. We uphold the central standard of deferential review set forth in that opinion. But we acknowledge some potential points of confusion and inconsistency and clarify the standard going forward.

¶28 The parties' briefs have highlighted potential problems with the formulation of the standard as stated in *B.R.* The mother points to clauses in the opinion that purportedly are viewed as effectively insulating juvenile court decisions from effective review on appeal. And even the State concedes that under *B.R.*, "Juvenile Court judges have long been afforded even greater deference than their district court counterparts."

¶29 We see the matter differently, but understand that some of the language in *B.R.* may be contributing to some misunderstanding. At least two sentences in *B.R.* may be adding to a sense that juvenile court judges are entitled to an extra measure of deference: (a) the statement that a "juvenile court's decision should be afforded a high degree of deference," and (b) the assertion that "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *State ex rel. B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435.

¶30 We disavow these sentences, and any other "language in *B.R.*" that could be read to "suggest[] that there is a different standard of review for juvenile courts." *See In re G.D.*, 2021 UT 19, ¶ 72 n.46, __ P.3d __ (making a parallel point). And we hereby clarify that the deference afforded to the juvenile court is the same level of deference given to all lower court findings of fact and "fact-like" determinations of mixed questions.

¶31 There is no universal bar on an appellate court "reweighing" evidence considered by the juvenile courts. And the bare existence of any conceivable "foundation for the court's decision . . . in the evidence" is no trump card foreclosing appellate review. Instead, any "reweighing" or consideration of "foundation" in the evidence must be guided by the operative deferential standard of review: "[T]he juvenile court's decision [can] be overturned only if it either failed to consider all of the facts or considered all of the facts and its decision was nonetheless

against the *clear weight* of the evidence." *B.R.*, 2007 UT 82, ¶ 12. (emphasis added).

¶32 Under this standard, an appellate court should not perform its own independent "reweighing" of the evidence to decide how it would have resolved the matter in the first instance. A measure of deference is owing. But such deference is not absolute. Not every conceivable "foundation" in evidence is a basis for affirmance. The lower court's decision should be respected unless the court "failed to consider all of the facts" or reached a decision "against the clear weight of the evidence." *Id.*

¶33 We affirm the court of appeals' decision in this case under this clarified standard. In affirming the juvenile court's decision terminating the mother's parental rights, the court of appeals vaguely noted that "due to 'the factually intense nature' of a termination decision, 'the juvenile court's decision should be afforded a high degree of deference.'" *State ex rel. E.R.*, 2019 UT App 208, ¶ 8, 457 P.3d 389 (quoting *B.R.*, 2007 UT 82, ¶ 12). But it ultimately applied the correct standard of review. And we affirm on that basis.

¶34 The court of appeals stated that it would overturn the juvenile court's decision "only if the result is 'against the clear weight of the evidence' or leaves us 'with a firm and definite conviction that a mistake has been made.'" *Id.* (quoting *B.R.*, 2007 UT 82, ¶ 12). And in affirming the juvenile court's decision, the court of appeals did not just consider whether any "foundation for the court's decision exists in the evidence." *B.R.*, 2007 UT 82, ¶ 12. It also considered the evidence presented to the juvenile court and determined that the mother's challenges failed to "demonstrate that the juvenile court's findings were against the clear weight of the evidence." *E.R.*, 2019 UT App 208, ¶ 13.

¶35 This was a correct application of the governing standard of review set forth in *B.R.* And the mother in this case has identified no other basis for reversal. We accordingly affirm the decision of the court of appeals.

--------