# 2022 UT App 98

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF G.B. AND A.C.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

T.R.B.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20210396-CA
Filed August 4, 2022

Fifth District Juvenile Court, Cedar City Department
The Honorable Troy A. Little
No. 1195807

Colleen K. Coebergh, Attorney for Appellant

Sean D. Reyes, Carol L. C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN FORSTER and JUSTICE DIANA
HAGEN concurred.[1]

---

1. Justice Diana Hagen began her work on this case as a member
of the Utah Court of Appeals. She became a member of the Utah
Supreme Court thereafter and completed her work on the case
sitting by special assignment as authorized by law. *See generally*
Utah R. Jud. Admin. 3-108(4).

TENNEY, Judge:

¶1    The Division of Child and Family Services (DCFS) removed G.B. and his maternal half-brother, A.C., from their home in connection with their mother's arrest on drug-related charges and reports of domestic violence at the home. The juvenile court later adjudicated the two children as "abused and neglected," and as part of this determination, it made a subsidiary finding that G.B.'s father, T.R.B. (Father), "has issues related to the use of illegal substances." Based on this finding, the court ordered Father to complete a substance abuse evaluation and submit to random drug testing.

¶2    Father now challenges the juvenile court's abuse determination as well as its disposition order. For the reasons set forth below, we affirm.

BACKGROUND

*Petition for Protective Custody*

¶3    In February 2021, two-year-old G.B. and six-year-old A.C. were living with Father and their biological mother (Mother). Father is G.B.'s biological father, but he's not A.C.'s. That month, DCFS filed a verified petition seeking protective custody of the children on the basis that they were "abused, neglected, or dependent." The petition set forth several sets of facts in support of the "abuse, neglect, or dependency" allegations.

¶4    First, the petition alleged that Mother and Father "had recently engaged in Domestic Violence" and that the children had been "exposed" to that domestic violence. It alleged that when police responded to a recent domestic disturbance at the home, Mother told officers that Father had "pushed [her] into the tub [and] rammed her head into the wall, before throwing her into the

wall." It also noted that A.C. reported that Mother and Father "say mean words to each other," that A.C. "has had to go upstairs so that he would not have to hear the fighting," and that Father "broke his door when upset on one occasion."

¶5     Second, the petition alleged that DCFS had recently received "information" indicating that Father "had hit a child on the back hard enough to leave bruising."

¶6     Third, the petition made a number of allegations about the living conditions at the family home. Of note, it alleged that the home was "observed to have broken pieces of glass outside" and "a nail . . . in close proximity to the children's toys." It also alleged that the "children were observed between February 8, 2021 and February 12, 2021 to be dirty, [with] hair so messy that knots had to be cut out" and "feet which were black."

¶7     Finally (and most significantly for purposes of this appeal), the petition included several allegations about illegal drug use by both Mother and Father.

¶8     With respect to Mother, the petition asserted that she had recently been arrested for driving while intoxicated and that the arresting officer had discovered illegal drugs and drug paraphernalia in her backpack. The petition also detailed other instances in which illegal drugs or drug paraphernalia had been found near Mother, including an instance in which drugs and paraphernalia were found in a place that "would have been accessible by the children."

¶9     The petition further alleged that Father "has issues related to the use of illegal substances." According to the petition, "Mother has stated that she uses heroin with [Father] daily and that he uses approximately a gram a day." The petition also alleged that when police responded to the domestic disturbance described above, Mother told them "that she and [Father] got into

an argument after she discovered [Father] and another individual getting ready to use substances." According to the petition, responding officers had searched a "camp trailer" on the property and found "several pipes, tinfoil with heroin residue, a burned spoon, and syringes."[2]

¶10   The petition did note, however, that Father "denied any use of illegal substances or that he was aware the Mother used illegal substances." And it further noted that Father had "claimed [that] any paraphernalia" found in the trailer "belonged [to his friend]." But the petition also alleged that about two months after the paraphernalia was found in the trailer, Father refused to let a DCFS caseworker inside that trailer and declined to take a drug test. And it alleged that Father then "admitted" to the caseworker that he and Mother smoked cigarettes in the trailer where the drug paraphernalia was found.

*Pretrial Proceedings and Adjudication Hearing*

¶11   The juvenile court held a shelter hearing after the petition was filed. At the close of the hearing, the court approved the removal of the children and placed them in DCFS's temporary custody.

¶12   On March 23, 2021, the court held a pretrial hearing. At that hearing, Mother responded to the allegations in the petition pursuant to rule 34(e) of the Utah Rules of Juvenile Procedure, meaning that while she neither admitted nor denied the

---

2. There is some disagreement in the record about who owned the property on which the camp trailer was located. At the adjudication hearing, a police officer suggested that the property belonged to Father's mother. But Father testified that the property belonged to him. Regardless, it is undisputed that when the police discovered the drug paraphernalia, Father, Mother, and the children were living on the property.

allegations, she agreed that the court would treat the allegations as true. *See* Utah R. Juv. P. 34(e) ("A respondent may answer by admitting or denying the specific allegations of the petition, or by declining to admit or deny the allegations. Allegations not specifically denied by a respondent shall be deemed true."). Father continued to deny the allegations pertaining to his substance abuse, however, so the court scheduled an adjudication hearing to address the allegations against him. The court also found the children to be neglected and abused by Mother and ordered DCFS to develop a child and family service plan for the family and each child, to set a primary permanency goal of reunification, and to provide reunification services to Mother. That plan required Mother to, among other things, "participate and engage in a parenting program to increase parenting knowledge and behavior." *See* Utah Code Ann. § 62A-4a-205(8)(d) (LexisNexis Supp. 2021) ("[C]hild and family plans shall address problems that . . . keep a child in placement . . . .").

¶13    At his adjudication hearing, Father entered a rule 34(e) plea of his own regarding most of the allegations in the petition, but he still denied the allegation that he "has issues related to the use of illegal substances." The hearing was accordingly limited to determining whether Father had "issues related to the use of illegal substances." As a further point of specificity, Father did not dispute that drug paraphernalia was "found on the property"; instead, Father only disputed that the paraphernalia "pertain[ed] to him."

¶14    The State presented three witnesses: an officer (Officer) who was present when police found the drug paraphernalia in the camp trailer, Mother, and the DCFS investigator (Investigator) assigned to the case.

¶15    Officer testified that when he responded to the domestic disturbance, Mother told him that she and Father started fighting because Father "was out with his girlfriend in the camp trailer

using drugs." According to Officer, Mother told him she "had seen [Father] using out [in the trailer] many times." Officer also testified that another officer found drug paraphernalia in the trailer that day, including "several used syringes," "used tinfoil with burn marks on it consistent with smoking illegal substances," "a pipe or two," and "a spoon with burnt residue in it." Officer further testified that he spoke with Father on the phone a week later and that Father admitted during that conversation that his friend "used drugs . . . out in the trailer." Finally, Officer testified that Father offered to "submit to a drug test" but that Officer never actually had him complete one.

¶16 In her testimony, Mother confirmed that she had told police that Father "had been using illegal substances in the trailer on the property." She also confirmed that she had reported that Father "was using one gram of heroin daily." But Mother also claimed that she had only "made an assumption that he was using heroin" because she "had picked it up for him" and that she "had never actually seen him doing it." Mother also testified that she and Father "smoke[d] cigarettes" in the trailer. On cross-examination, Mother stated that she was "satisfied that [Father] was not using drugs" after seeing the results of a drug test that he had taken for work in March 2021.

¶17 Finally, Investigator testified that he spoke with Father in February 2021 and that Father's "pupils were very pinpoint" at that time. Investigator said that when he asked Father about Mother's drug use, Father "claimed that he didn't know anything that was going on with her." Investigator further testified that when he asked to see the trailer where police had found drug paraphernalia, Father "den[ied him] access." Investigator said that Father also initially "claimed it wasn't his trailer . . . and that just no one goes in it." But when Investigator pressed, Father "admitted that he goes inside to smoke cigarettes." Investigator said that he asked Father to take a drug test but that Father "declined." Finally, Investigator testified that he spoke with

Mother in February 2021 and that Mother told him that she and Father "had used together, that she was using more than him, specifically heroin, but that they were using together daily."

¶18 After the State rested, Father testified. He claimed that he had not "used any illegal substances" "in the last five years" and that he takes "random drug tests and at least one drug test a year" for his work as a truck driver. Father also claimed that he had passed drug tests administered by DCFS somewhere between 18 and 24 months earlier.

¶19 When asked about the trailer, Father said that it belonged to his friend and that he was "just allowing her to put her trailer on [his] property." Father testified that he was "aware [his friend] ha[d] used illegal substances in the past," but he denied that the drug paraphernalia was his. On cross-examination, Father admitted that he sometimes used the trailer "as a storage unit." He also admitted that during the winter of 2020, he went into it to smoke cigarettes.

*Adjudication Ruling*

¶20 After closing arguments, the court found "by clear and convincing evidence" that:

- "On or about December 28, 2020, Law Enforcement discovered drug paraphernalia including several pipes, tinfoil with heroin residue, a burned spoon, and syringes in a camper on the property where the family lived."

- "On or about February 5, 2021, [DCFS] contacted [Father]. [Father] refused to allow the caseworker to see inside the trailer but admitted that they (the Mother and [Father]) do smoke (cigarettes) inside of it. [Father] was asked to drug test for [DCFS], and he has declined to do so."

- "Mother has stated that she uses heroin with [Father] daily and that he uses approximately a gram a day."

- Mother testified "that she gets heroin for [Father], and she gives it to him."

- "Father has denied any drug use or any knowledge of drug use by the Mother."

¶21    Drawing on these findings, the court found by "clear and convincing evidence" that Father "has issues related to the use of illegal substances." Elaborating on this, the court referenced the fact that there was "paraphernalia and some residue found in a location where both [Mother] and [Father] say they've been and they frequent often," meaning the trailer. And referring again to Father's admitted habit of smoking cigarettes in that trailer, the court opined that Father was just "way too close" to illegal drugs and that this was "concerning to the Court."

¶22    The court accordingly adjudicated the children as "abused and neglected" as to Father. The court determined that this was "true by clear and convincing evidence," and it based this determination on both Father's partial rule 34(e) response and its finding that Father "has issues related to the use of illegal substances."

*Disposition Hearing*

¶23    The court later held a disposition hearing. There, the State directed the court's attention to the child and family plan that DCFS had submitted. That plan listed several proposed responsibilities for Father, including the requirement that he complete a substance abuse evaluation and submit to random drug testing. The State asked the court to impose those requirements on Father.

¶24    After hearing from Father's counsel, the court entered its disposition order. In that ruling, the court determined that "all" the parental responsibilities proposed in the child and family plan were warranted, including the requirement that Father complete a substance abuse evaluation and submit to random drug testing. The court also ordered Father to "remain drug and alcohol free" until the court "hear[d] otherwise from [Father's] substance abuse evaluation."

¶25    Father timely appealed.

## ISSUES AND STANDARDS OF REVIEW

¶26    Father first challenges the juvenile court's determination that the children were abused. It's somewhat unclear from his brief whether Father's challenge rests on factual or legal grounds. As explained below, however, we need not decide which challenge Father is making (or, by extension, which standard of review would apply) because, even without the abuse determination, the juvenile court still had jurisdiction to enter disposition orders based on its unchallenged neglect determination.

¶27    Father also challenges the juvenile court's disposition order, and he does so on two fronts. First, he argues that the disposition order was improper because it was based on an unsupported finding that he "has issues related to the use of illegal substances." This court "review[s] the juvenile court's findings of fact for clear error." *In re G.D.*, 2021 UT 19, ¶ 37, 491 P.3d 867 (quotation simplified). And a "finding of fact is clearly erroneous only when, in light of the evidence supporting the finding, it is against the clear weight of the evidence." *In re B.C.*, 2018 UT App 125, ¶ 2, 428 P.3d 18 (per curiam). Second, Father argues that the court "erred in making a disposition order [that] includ[ed] drug testing, evaluation, and treatment." "The juvenile

court's decision can be overturned only if it either failed to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." *In re E.R.*, 2021 UT 36, ¶ 31, 496 P.3d 58 (quotation simplified).

## ANALYSIS

### I. Abuse Determination

¶28    Father first challenges the juvenile court's determination that the children were abused.

¶29    As an initial matter we note that although DCFS's petition alleged that the children were abused—including an allegation that Father "had hit a child on the back hard enough to leave bruising"—Father's partial rule 34(e) response only denied the allegation that he "has issues related to the use of illegal substances." From this alone, we could conclude that Father's challenge is meritless. But in any event, we need not decide this challenge on its merits because Father has not challenged the court's separate and independent determination that the children were neglected.

¶30    "Utah's juvenile courts are creatures of statute, and thus are courts of limited jurisdiction." *In re B.B.*, 2002 UT App 82, ¶ 12, 45 P.3d 527. "Because they are courts of limited jurisdiction, juvenile courts are allowed to do only what the legislature has expressly authorized." *Id.*

¶31    Utah Code section 78A-6-103 defines the juvenile court's jurisdiction. Relevant to this appeal, that section states that a juvenile court "has original jurisdiction over any proceeding concerning . . . a child who is an abused child, neglected child, or dependent child." Utah Code Ann. § 78A-6-103(2)(a) (LexisNexis

Supp. 2021). Once jurisdiction is established under that section, "the court may order reasonable conditions to be complied with by a minor's parents or guardian, a minor's custodian, or any other person who has been made a party to the proceedings." *Id.* § 78A-6-117(2)(q)(i).[3]

¶32　As noted, the juvenile court adjudicated the children as "abused and neglected," thereby conferring jurisdiction under section 78A-6-103(2)(a). Importantly, jurisdiction could properly be based on either the abuse determination *or* the neglect determination. *See id.* § 78A-6-103(2); *see also In re S.F.*, 2012 UT App 10, ¶ 33, 268 P.3d 831 ("Importantly, once a child has been adjudicated as neglected, the juvenile court has continuing jurisdiction over the child . . . ."); *cf. In re B.T.*, 2009 UT App 182, ¶ 10, 214 P.3d 881 (holding that the facts were inadequate "to support a determination of neglect" but remanding "for a finding of dependency").

¶33　While Father has challenged the abuse determination on appeal, he has not challenged the separate determination that the children were neglected. Because of this, we have no need to decide his challenge to the abuse determination. After all, even if we accepted Father's arguments about the abuse determination, the unchallenged neglect determination would still provide the juvenile court with jurisdiction, thereby giving the juvenile court authority to "order" Father to comply with "reasonable conditions" following a disposition hearing. Utah Code Ann. § 78A-6-117(2)(q)(i). Indeed, Father appears to agree. In his brief,

---

3. Utah Code section 78A-6-117 was repealed in September 2021. We cite the provision in effect at the relevant time, which was section 78A-6-117(2)(q)(i). For reference, the current provision now similarly states that "[u]pon adjudication," a "juvenile court may make the dispositions described in Subsection (2)," which include "reasonable orders for the best interest of the minor." Utah Code Ann. § 80-3-405(1)(a), (2)(h) (LexisNexis Supp. 2021).

he specifically "clarifie[d] that he is not arguing that he should not be adjudicated and found to be within the jurisdiction of the Court."

¶34    In light of this concession, it is not clear what Father hopes to gain by challenging the abuse determination. There are perhaps some collateral consequences associated with an abuse determination that do not follow from a neglect determination. But other than a vague (and unsupported) reference to "presumptions that reunification services should not be offered" in cases of abuse, Father has not briefed any such difference. Moreover, Father is not challenging the imposition of any such collateral consequences in this case. Instead, the only relief that Father seeks in this appeal is a reversal of the conditions that were imposed on him in the disposition hearing. Because the unchallenged neglect determination provided the court with jurisdiction to order those conditions, we decline to address Father's challenge to the court's abuse determination. *See M.F. v. J.F.*, 2013 UT App 247, ¶ 11, 312 P.3d 946 (recognizing that "[o]nce the juvenile court has adjudicated the child as falling under its jurisdiction, it has ongoing jurisdiction over that child and may make dispositions by court order" (quotation simplified)).

## II. Disposition Order

¶35    As noted, the juvenile court's neglect determination provided it with jurisdiction to "order reasonable conditions to be complied with by [the children's] parents or guardian, [the children's] custodian, or any other person who has been made a party to the proceedings." Utah Code Ann. § 78A-6-117(2)(q)(i). Here, after a disposition hearing, the juvenile court ordered Father to complete a substance abuse evaluation and submit to random drug testing.

¶36    Father now challenges that order on two fronts. First, he notes that these requirements were predicated on the court's

finding that he "has issues related to the use of illegal substances." According to Father, that finding was an "abuse of discretion." And second, Father argues that the order itself was unwarranted because it was not supported by the court's findings.

A.    Finding Related to Illegal Substances

¶37    Father first challenges the court's finding "related to drugs and paraphernalia." Though Father's brief is somewhat unclear on this point, we understand him to be challenging the court's finding that he "has issues related to the use of illegal substances."

¶38    As an initial matter, Father suggests that we should review this for an abuse of discretion. This suggestion is misplaced, however, because the ruling in question was a factual determination. *See generally In re K.D.N.*, 2013 UT App 298, ¶ 8, 318 P.3d 768 ("Juvenile courts are required to make comprehensive and detailed factual findings in support of their ultimate conclusions."). Because it was a factual determination, Father must show that the finding was clearly erroneous. *See In re G.D.*, 2021 UT 19, ¶ 37, 491 P.3d 867. And under our accepted standards, a "finding of fact is clearly erroneous only when, in light of the evidence supporting the finding, it is against the clear weight of the evidence." *In re B.C.*, 2018 UT App 125, ¶ 2, 428 P.3d 18 (per curiam).

¶39    Properly framed, Father's argument is that this finding was clearly erroneous because there were "no indications or medical assessments of drug ingestion" by Father. But as noted, the juvenile court didn't directly find that Father used drugs. Rather, it found that Father "has issues related to the use of illegal substances." And in support of that finding, the court entered a series of subsidiary findings, all of which Father has either conceded or at least failed to successfully challenge on appeal. For example:

- The court found that police "discovered drug paraphernalia including several pipes, tinfoil with heroin residue, a burned spoon, and syringes in a camper on the property where the family lived." And relatedly, the court also found that Father frequented that trailer to smoke cigarettes. In his brief, Father admits that drug "[p]araphernalia was found in a trailer he had been in and used for smoking."

- The court found that in February 2021, Father "refused to allow [a DCFS] caseworker to see inside the trailer." Father does not challenge this finding on appeal.

- The court found that in February 2021, a DCFS investigator asked Father to take a drug test, but that Father declined to take the test. Father has not challenged this finding on appeal, instead simply arguing that this refusal shouldn't matter because he had previously offered to take a drug test and had allegedly "tested clean" when he took a "test for his employer" on a different occasion.

- The court found that "Mother has stated that she uses heroin with [Father] daily and that he uses approximately a gram a day." Father does not challenge the court's finding that Mother said this. Instead, he simply notes that Mother later retracted this claim. But the court acknowledged that Mother had retracted the claim. And even so, the court still found (and thought it significant) that Mother had said that Father used drugs.

- Relatedly, the court found it "concerning" and "disturbing" that Mother had testified "that she gets heroin for [Father], and she gives it to him." While Father emphasizes Mother's "lack of credibility," "we do not disturb [the juvenile court's] determinations of the witnesses' credibility because it "is in an advantaged

position with respect to the parties and the witnesses."[4] *In re G.D.B.*, 2019 UT App 29, ¶ 20, 440 P.3d 706 (quotation simplified).

- Finally, the court found that Mother had drug problems of her own. In his brief, Father admits that "there is overwhelming evidence of the mother's drug use," including admissions by Mother "that she has a significant drug problem."

¶40 Again, the finding at issue was that Father "has issues related to the use of illegal substances." And as the court later explained, this finding was essentially that Father was "way too close" to illegal drugs. The subsidiary findings described above both individually and collectively support this because they show that Father voluntarily placed himself in close proximity to both people who used drugs and to illegal drugs themselves. Father

---

4. The juvenile court didn't enter an explicit finding that Mother was credible on this point. However, within the same sentence in which the court acknowledged that Mother had at one point "recanted" this claim, the court also stated that it still found it "disturbing" that Mother had originally stated that "she picks up heroin for [Father]." So whatever its concerns about Mother, the court still found this statement to be credible enough to be relied on as part of its decision-making calculus. In other such circumstances, we have deferred to credibility findings that courts "implicitly" made. *See, e.g.*, *Koehler v. Allen*, 2020 UT App 73, ¶ 17, 466 P.3d 738; *Gerwe v. Gerwe*, 2018 UT App 75, ¶ 31, 424 P.3d 1113. And such deference is warranted in situations like this one where a court has expressly chosen to rely on a particular statement as support for its ruling. *See In re A.R.*, 2017 UT App 153, ¶ 26, 402 P.3d 206 (recognizing that "courts are not required to make a credibility finding for each witness" and that a court's "findings of ultimate facts implicitly reflect consideration of the believability of the witnesses' testimony" (quotation simplified)).

therefore has not shown that this finding was "against the clear weight of the evidence." *In re B.C.*, 2018 UT App 125, ¶ 2.

B.      Drug Testing Requirement

¶41    At the disposition hearing, the court ordered Father to submit to "drug testing, evaluation, and treatment." Father argues that this order was unwarranted.

¶42    As explained, when a juvenile court has adjudicated a minor child as abused, neglected, or dependent, "the court may order reasonable conditions to be complied with by a minor's parents or guardian, a minor's custodian, or any other person who has been made a party to the proceedings." Utah Code Ann. § 78A-6-117(2)(q)(i). Whether a condition is "reasonable" depends on the circumstances of each case. *See In re S.A.*, 2016 UT App 191, ¶ 7, 382 P.3d 642 (per curiam). Helpful considerations include whether the condition is "reasonably related to the juvenile court's factual finding[s]," "proportionate to the concern raised by" those findings, and "reasonably calculated to serve the best interest of the child." *Id.* ¶ 7. Furthermore, we can overturn the juvenile court's decision only "if it either failed to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." *In re E.R.*, 2021 UT 36, ¶ 31, 496 P.3d 58 (quotation simplified).

¶43    Our decision in *In re S.A.* is illustrative. There, the "juvenile court found that the facts did not establish abuse or neglect but entered an adjudication order stating that the child was dependent as to [the father]." *In re S.A.*, 2016 UT App 191, ¶ 2. In a subsequent disposition order, the court then ordered that the father "complete a domestic violence assessment." *Id.* ¶ 5. The father challenged that order on appeal, claiming that he could not be required to complete the assessment "because there was no neglect adjudication" and because "the juvenile court found no fault by" him. *Id.* We upheld the order on appeal, however,

concluding that it was "reasonably related to the juvenile court's factual finding that the parents have hit each other on occasion in the presence of the child." *Id.* ¶ 7 (quotation simplified). We also concluded that the condition was "proportionate to the concern raised by that finding" and was "reasonably calculated to serve the best interest of the child." *Id.*

¶44    Here, Father claims that the court could not require him to submit to drug testing and treatment without first finding that he actually "used drugs" himself. Father argues that such a finding was required by Utah Code section 62A-4a-205, under which "a child and family plan may only include requirements that . . . address findings made by the court." Utah Code Ann. § 62A-4a-205(8)(h).

¶45    But while the court didn't find that there was clear and convincing evidence that Father uses drugs, it did find that "Father is connected to too many people and locations which *raises concerns* for the Court that he *may* be abusing substances." (Emphases added.) And there was ample support for this concern. In addition to its proximity-based findings, the court found that Mother had told both Officer and Investigator that Father used drugs, and it further found that Father had been resistant on at least one occasion to DCFS's request that he take a drug test.

¶46    As also discussed, the court's findings showed that Father frequently chose to be around illegal drugs and people who use them. Again, Father commonly associated with both Mother and his friend, both of whom had drug problems; he frequented a trailer on his property in which drug paraphernalia was found; and he was resistant to DCFS's efforts to look inside that trailer. As noted, this trailer was located on the property where Father lived with the children. And finally, the children's other caretaker (Mother) has admitted that she has drug problems of her own, and all of this arises against the backdrop of the court's unchallenged determination that the children were neglected.

¶47 There are obvious dangers associated with advertently or even inadvertently exposing children to illegal drugs. There are also obvious dangers associated with leaving children in the care of a parent or custodian who is under the influence of illegal drugs. Here, given the reports of Father's illegal drug use, his ongoing proximity to people who use illegal drugs, his habit of frequenting a place in which drug paraphernalia was later found, and the fact that the children's other parent had an ongoing drug problem, we have no trouble concluding that the court's decision to require Father to submit to drug evaluation and testing was "proportionate to the concern raised by" the findings and was "reasonably calculated to serve the best interest" of the neglected and thus vulnerable minor children who were sometimes in Father's care. *In re S.A.*, 2016 UT App 191, ¶ 7.

¶48 Again, we cannot overturn the juvenile court's decision unless "it either failed to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." *In re E.R.*, 2021 UT 36, ¶ 31 (quotation simplified). Because the juvenile court considered all the facts and its decision was not "against the clear weight of the evidence," *id.* (quotation simplified), we affirm the court's disposition order.[5]

---

5. Father also argues that the court violated his due process rights by "impermissibly shifting the burden" to him "to prove he was not using illicit drugs." But with few exceptions, we consider only issues that were "raised and argued" below. *True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶¶ 23, 28–30, 427 P.3d 338. And to properly preserve an issue, "a party must raise it before the [juvenile] court specifically, in a timely manner, and with support by evidence and relevant legal authority, such that the issue has been presented to the [juvenile] court in such a way that the [juvenile] court has an opportunity to rule on it." *Id.* ¶ 24 (quotation simplified).

(continued…)

CONCLUSION

¶49    We have no need to address Father's challenge to the juvenile court's abuse determination because, even if Father is correct, the neglect determination independently provided the juvenile court with jurisdiction and the ability to enter disposition orders in the best interest of the children. Moreover, we conclude that the juvenile court's finding that Father "has issues related to the use of illegal substances" was not clearly erroneous. We further conclude that the juvenile court's requirement that Father submit to "drug testing, evaluation, and treatment" was reasonable.

¶50    Affirmed.

———————

In support of his burden-shifting argument, Father points to a passage from his counsel's closing argument in which counsel asserted that "[t]he burden is not [Father's] to prove anything." But read in context, this appears to have been a response to the State's assertions about how the court should view Father's refusal to take the DCFS-requested drug test. It's unclear whether counsel meant this as a constitutional challenge of the sort Father now makes on appeal, or whether counsel was instead simply asking the court to give his refusal little evidentiary weight. In any event, even if this passing statement could be read as a constitutional challenge, Father did not provide the juvenile court with any "evidence and relevant legal authority" to support such a challenge. *Id.* As a result, the burden-shifting argument that Father makes on appeal was not "presented to the [juvenile] court in such a way that the [juvenile] court [had] an opportunity to rule on it," *id.* (quotation simplified), so it is therefore unpreserved. And because Father has not argued that any exception to the preservation rule applies, we decline to address it. *See id.* ¶ 30.