**2022 UT 39**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

IN THE INTEREST OF A.B., A PERSON UNDER EIGHTEEN YEARS OF AGE

K.T.,
*Respondent*,

*v.*

S.T., T.T., and the OFFICE OF THE GUARDIAN AD LITEM,
*Petitioners*.

No. 20210776
Heard May 11, 2022
Filed November 25, 2022

On Certiorari to the Utah Court of Appeals

Third District Juvenile Court, Salt Lake
The Honorable Julie Lund
No. 1174795

Attorneys:

Steve S. Christensen, Clinton R. Brimhall, Salt Lake City, for respondent

Sheleigh A. Harding, Salt Lake City, for petitioners S.T. and T.T.

Martha M. Pierce, Salt Lake City, Guardian ad Litem for petitioner A.B.

CHIEF JUSTICE DURRANT authored the opinion of the Court in which ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, JUDGE BROWN, and JUDGE BATES joined.

Having recused himself, JUSTICE LEE did not participate herein; DISTRICT COURT JUDGE MATTHEW D. BATES sat.

Due to his retirement, JUSTICE HIMONAS did not participate herein; DISTRICT COURT JUDGE JENNIFER A. BROWN sat.

JUSTICE DIANA HAGEN became a member of the Court on May 18, 2022, after oral argument in the matter, and accordingly, did not participate.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 K.T. (Mother) left her daughter, A.B., in the care of S.T. (Aunt) and T.T. (Uncle) for nearly a year—from the beginning of summer through the following school year. When Mother came to take A.B. back, Aunt and Uncle, rather than returning A.B. to Mother's care, sought custody and a protective order, claiming Mother had abused and neglected A.B.

¶2 The juvenile court determined that Mother had neglected A.B. and awarded custody to Aunt and Uncle. The court based its neglect determination on Mother's "emotional maltreatment" of A.B., her pattern of leaving A.B. with relatives, her inability to care for A.B. due to illness, and her failure to help Aunt and Uncle with A.B.'s expenses.

¶3 Mother appealed this decision, and the court of appeals reversed, holding that the juvenile court's findings and legal conclusions "d[id] not meet the statutory definition of 'neglect'" as found in Utah Code section 80-1-102(58)(a).[1] The court reviewed the juvenile court's decision nondeferentially because it determined that the question on review was a law-like mixed question of fact and law.[2] The court of appeals also declined Aunt, Uncle, and the Guardian ad Litem's (collectively, Petitioners) invitation to affirm the juvenile court's decision on the alternative ground of abuse.[3] Petitioners sought review of the court of appeals' decision.

¶4 We granted certiorari to address three issues: whether the court of appeals erred by (1) analyzing the juvenile court's application of the neglect statute as a law-like mixed question and applying a nondeferential standard of review; (2) reversing the lower court's neglect determination; and (3) not affirming on the alternative ground of abuse. Petitioners have failed to persuade us

---

[1] *In re A.B.*, 2021 UT App 91, ¶ 22, 498 P.3d 894. The juvenile court entered its order on April 8, 2020, and, at that time, the neglect statute was located in Utah Code section 78A-6-105(40). The definition has since been moved and renumbered, but it is substantively the same, so we cite to the current version of the code.

[2] *Id.* ¶¶ 9–10.

[3] *Id.* ¶ 14 n.3.

that the court of appeals erred on any of these three issues, so we affirm.

**Background**

¶5 Since A.B.'s birth in 2008, Mother, a single parent, has relied on relatives to help care for A.B., often leaving A.B. in the care of relatives for extended periods of time. Continuing this pattern, in May 2018, Mother left A.B. with Aunt and Uncle for the summer and the following school year. Mother then relocated to North Carolina.

¶6 In May 2019, Mother tried to take A.B. back to join her in North Carolina. Rather than returning A.B. to Mother's care, Aunt and Uncle sought custody and a protective order regarding A.B., alleging a history of neglect and abuse by Mother. Mother denied these allegations, and the issue went to trial.

¶7 At trial, testimony revealed difficulties in Mother and A.B.'s relationship. Mother's parenting style generally lacked affection and care, with Mother often acting gruff and impatient. Relatives observed no hugging and very little affection from Mother toward A.B. Mother also used profanity, such as when she asked A.B. why she was "acting like a bitch," and she called A.B. names such as "jackass" and "stupid." Mother and A.B. had a history of fighting, and Mother admitted throwing things in A.B.'s presence when angry.

¶8 After a cruise in 2017, Mother developed Mal de Debarquement Syndrome (MdDS),[4] which causes anger, headaches, pain, stress, anxiety, and nausea. She also has an autoimmune disorder and suffers from depression. These medical conditions prevent her from working, and she cannot afford treatment. She relies on her boyfriend for financial support.

¶9 While A.B. was staying with Aunt and Uncle, Mother did not provide financial support for A.B.'s care. Mother also declined extra opportunities to visit with A.B. and to be involved in A.B.'s care, including taking phone calls and attending an eye doctor

---

[4] MdDS "is a condition characterized by a subjective sensation of self-motion (i.e., rocking, swaying, bobbing), which persists after an initial exposure to passive motion, usually after sea travel but occasionally after air or overland trips." Viviana Mucci et al., *Mal de Debarquement Syndrome: A Matter of Loops?*, 11 FRONTIERS IN NEUROLOGY 2 (Nov. 10, 2020), https://www.frontiersin.org/articles/10.3389/fneur.2020.576860/full.

appointment. Uncle testified that Mother always put her interests above A.B.'s and tried to unload raising A.B. onto relatives.

¶10 In 2018, while living with Mother, A.B. stated she "want[ed] to die," which the court viewed as evidence of suicidal ideation. Mother argued that this statement was blown out of proportion and was not abnormal for a child of A.B.'s age. Mother stated that, at times, A.B. had demonstrated "rage and hatred" toward her.

¶11 A concerning incident also took place not long before the trial. During an unsupervised visit, Mother directed A.B. to tell her Guardian ad Litem that she needed to go home to her mother. And Mother said that if A.B. did not come home, "a lot of people will get hurt." Uncle overheard this conversation through A.B.'s smartwatch and immediately terminated the visit. The juvenile court found this conversation to be "emotionally abusive." Mother also testified she would cut off contact between A.B. and Aunt and Uncle if she received custody, a claim the court thought demonstrated "a complete disregard for the best interests of [A.B.]" given the positive bond she has with Aunt and Uncle.

¶12 Based on these facts, the juvenile court determined that A.B. had been neglected by Mother and awarded custody to Aunt and Uncle. In categorizing the situation as "neglect," the juvenile court made four legal conclusions:

> (1) [A.B.] has been neglected by her mother in the form of emotional maltreatment, which has caused [A.B.] to be insecure, afraid and emotionally disturbed.
> (2) [A.B.] has been neglected by her mother by being placed with relatives for extended and regular periods of time without support from her mother.
> (3) The mother's physical and emotional problems prevent her from being able to parent [A.B.] properly.
> (4) The mother has neglected [A.B.] in not assisting in paying for her support or providing items for [A.B.'s] care. The mother does not have gainful employment currently. This lack of stability prevents her from parenting [A.B.] properly.

¶13 Mother appealed, and the court of appeals reversed the juvenile court's decision.[5] Because Mother did not dispute the relevant facts as found by the juvenile court, and because the

---

[5] *In re A.B.*, 2021 UT App 91, ¶¶ 8, 22, 498 P.3d 894.

question on appeal was whether the facts met the legal standard of neglect, the court of appeals reviewed the juvenile court's decision as a "law-like" mixed question under a de novo standard of review, giving no deference to the juvenile court.[6]

¶14 After determining the standard of review, the court of appeals reversed the juvenile court's neglect determination, holding that the juvenile court "failed to properly link its findings of fact and conclusions of law to the statute defining 'neglect' in these situations."[7] Looking to the juvenile court's first conclusion of law—that "[A.B.] ha[s] been neglected by [Mother] in the form of emotional maltreatment"—the court noted that Aunt and Uncle had conceded that "emotional maltreatment . . . is not neglect."[8] And it stated that the concession was in line with court of appeals' caselaw holding that "the statutory definition of neglect cannot be construed to include emotional maltreatment."[9] The court similarly held that the other conclusions of law made by the juvenile court "d[id] not clearly fall within the statute's language."[10]

¶15 Because the language of the juvenile court's legal conclusions did not match with Utah Code section 80-1-102(58)(a)'s definition of neglect, the court of appeals proceeded to examine the juvenile court's factual findings to see if any of the six statutory grounds defining neglect were satisfied.[11] Based mainly on the first three grounds, the court determined that Mother did not neglect A.B.[12] The court concluded that the first ground listed in the statute, which addresses abandonment, was not satisfied because "[t]he juvenile court did not analyze whether a parent who leaves a child temporarily with relatives could be considered to have abandoned the child."[13] It also held that the second definition of neglect, referring to "lack of proper parental care," did not apply because

---

[6] *Id.* ¶ 10.

[7] *Id.* ¶ 11.

[8] *Id.* ¶ 14 (second and third alterations in original) (internal quotation marks omitted).

[9] *Id.* (citation omitted) (internal quotation marks omitted).

[10] *Id.*

[11] *Id.* ¶ 15.

[12] *Id.* ¶¶ 16–18, 22.

[13] *Id.* ¶ 21.

"the record . . . suggests that [A.B.] received proper parental care, even if not always at Mother's hand."[14] Finally, it noted that the third ground for neglect, failure or refusal of a parent to provide proper or necessary care, failed because while "Mother did refuse to pay Aunt and Uncle for . . . [A.B.'s] care," "the statute's plain language . . . says nothing about a parent's refusal to reimburse another caretaker for providing the care."[15]

¶16 The court of appeals also considered Petitioners' argument that it should affirm on the alternative ground that A.B. had been abused.[16] The court declined to affirm on this basis, noting that the juvenile court had used the term "emotional maltreatment" in its legal conclusions instead of the term of art "abuse," and that "the juvenile court made no substantive findings regarding emotional abuse."[17] Concluding that the juvenile court had erred in its neglect determination and declining to rule on the alternative ground of abuse, the court of appeals reversed.[18]

¶17 Petitioners now seek review of the court of appeals' decision. We address three issues: whether the court of appeals erred by (1) analyzing the juvenile court's application of the neglect statute as a law-like mixed question and applying a nondeferential standard of review; (2) reversing the lower court's neglect determination; and (3) not affirming on the alternative ground of abuse. We have appellate jurisdiction under Utah Code section 78A-3-102(3)(a).

**Standard of Review**

¶18 "On certiorari, we review the decision of the court of appeals and not that of the district court."[19] We typically review the court of appeals for correctness,[20] and "[t]he correctness of the court of appeals' decision turns, in part, on whether it accurately reviewed the [lower] court's decision under the appropriate standard of

---

[14] *Id.* ¶ 20.

[15] *Id.* ¶ 19.

[16] *Id.* ¶ 14 n.3.

[17] *Id.*

[18] *Id.* ¶ 22.

[19] *State v. Brake*, 2004 UT 95, ¶ 11, 103 P.3d 699 (citing *Longley v. Leucadia Fin. Corp.*, 2000 UT 69, ¶ 13, 9 P.3d 762).

[20] *Id.*

review."[21] So we review the court of appeals' decisions to apply a nondeferential standard of review and to reverse the juvenile court's neglect determination for correctness.

¶19 Affirming the juvenile court's decision on an alternative ground apparent from the record is a matter of discretion.[22] Thus, here, "whether the court of appeals properly refused" to affirm the district court's neglect determination on the alternate ground of abuse "is a matter that we review for an abuse of discretion."[23]

## Analysis

¶20 Petitioners argue the court of appeals erred in three ways. First, they contend the court of appeals erred by reviewing the juvenile court's application of the neglect statute nondeferentially. Second, they argue the court of appeals erred by reversing the juvenile court's neglect determination. Finally, they argue that even if the court of appeals was correct on the question of neglect, it erred by not affirming on the alternative basis of abuse.

¶21 We are not persuaded that the court of appeals erred on any of these three issues. First, we agree with the court of appeals' analysis that the juvenile court's application of the neglect statute to the facts of this case was a law-like mixed question, so a nondeferential standard of review was appropriate. Second, Petitioners have not persuaded us that the court of appeals got the neglect determination wrong. And third, Petitioners have not demonstrated that the court of appeals abused its discretion by not affirming on the alternative basis of abuse.

### I. The Court of Appeals Applied the Appropriate Standard of Review

¶22 The Guardian ad Litem argues that "[t]he court of appeals erred by rejecting *In re E.R.* to apply a de novo standard of review[,] 'giving no deference to the juvenile court.'"[24] According to the Guardian ad Litem, our decision in *In re E.R.*[25] established that all

---

[21] *State v. Levin*, 2006 UT 50, ¶ 15, 144 P.3d 1096 (citation omitted).

[22] *Olguin v. Anderton*, 2019 UT 73, ¶ 20, 456 P.3d 760 (citation omitted).

[23] *Bernat v. Allphin*, 2005 UT 1, ¶ 5, 106 P.3d 707 (citation omitted).

[24] (Quoting *In re A.B.*, 2021 UT App 91, ¶ 10, 498 P.3d 894.)

[25] 2021 UT 36, 496 P.3d 58.

mixed questions of fact and law in the child welfare context are subject to deferential review. Mother counters that *In re E.R.* established a deferential standard of review for only best interest determinations in termination proceedings—not for all mixed questions before the juvenile court. So, Mother argues, the court of appeals correctly applied the test from *In re E.R.* to determine that the question under review is a law-like mixed question, subject to de novo review. We agree with Mother that the court of appeals applied the proper standard of review because the juvenile court's application of the neglect statute in its neglect determination presented a law-like mixed question.

¶23 When determining the standard of review on appeal, we first categorize questions on review into one of three categories: (1) questions of law; (2) questions of fact; or (3) mixed questions of law and fact.[26] We afford the factfinder no deference on questions of law, reviewing issues de novo, and the most deference on questions of fact, reviewing only for clear error.[27] But mixed questions require further analysis because "[t]he standard of review . . . depends on the nature of the issue."[28]

¶24 In *In re E.R.*, we applied a three-factor test from *State v. Levin*[29] to determine whether a mixed question of fact and law was subject to de novo or deferential review.[30] The three factors allow courts to distinguish between "law-like" and "fact-like" mixed questions, where "[l]aw-like mixed questions are reviewed de novo, [and] fact-like mixed questions are reviewed deferentially."[31] The three factors from *Levin* are

> (1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on facts observed by the trial judge, such as a witness's appearance and demeanor, relevant to the application

---

[26] *Randolph v. State*, 2022 UT 34, ¶ 17, 515 P.3d 444 (citation omitted).

[27] *In re E.R.*, 2021 UT 36, ¶¶ 15–16.

[28] *Id.* ¶ 18 (citation omitted) (internal quotation marks omitted).

[29] 2006 UT 50, 144 P.3d 1096.

[30] *In re E.R.*, 2021 UT 36, ¶¶ 21–22.

[31] *Id.* ¶ 18 (citation omitted) (internal quotation marks omitted).

of the law that cannot be adequately reflected in the record available to appellate courts; and (3) other policy reasons that weigh for or against granting discretion to trial courts.[32]

¶25 Applying these factors, the *In re E.R.* court determined that best interest determinations in termination proceedings were a fact-like mixed question subject to deferential review.[33] The *In re E.R.* court noted that every best interest evaluation is fact-intensive, requiring courts to look at the unique needs and situations of different children,[34] and that "the juvenile court has a superior perspective in light of its view of the demeanor of both parents and children."[35] Specifically, the court recognized "that a party's demeanor is a factor that may be probative in a best interest analysis."[36] Considering the policy implications of de novo review as opposed to deferential review, the court held that the complex variety in facts between cases "st[oo]d in the way of appellate development of categorical rules in this field."[37]

¶26 The Guardian ad Litem argues that *In re E.R.* held that deferential review applies to "'all aspects' of juvenile court determinations including grounds, best interest, and placement."[38] This interpretation is inaccurate, however, because the paragraphs the Guardian ad Litem cites refer to caselaw establishing deferential review for "all aspects of the juvenile court's termination of parental rights determination"—not all aspects of child welfare cases generally.[39] Because, as Mother correctly states, "there was a different type of question at issue in *In re E.R.* than in this case," the court of appeals was correct to apply the *Levin* factors to the question before it.

---

[32] *Id.* ¶ 21 (quoting *Levin*, 2006 UT 50, ¶ 25).

[33] *Id.* ¶ 22.

[34] *Id.*

[35] *Id.* ¶ 23.

[36] *Id.* (citation omitted) (internal quotation marks omitted).

[37] *Id.* ¶ 22.

[38] (Citing *In re E.R.*, 2021 UT 36, ¶¶ 11–12.)

[39] *In re E.R.*, 2021 UT 36, ¶ 12.

¶27 Applying the *Levin* test as described in *In re E.R.*, the court of appeals determined that the juvenile court's application of the neglect statute to the facts of this case presented a law-like mixed question subject to nondeferential review.[40] Looking at the first two factors, the court noted that no facts were disputed on appeal, making it easier for the court to rely on the record.[41] As for the third factor, the court determined that "sound policy dictates that application of statute be reviewed de novo" and that "[d]e novo review here presents little downside and allows this court to establish precedent on which future litigants and lower courts can rely."[42]

¶28 We agree with the court of appeals' conclusion. Unlike the best interest determination considered in *In re E.R.*, with nearly unlimited possible scenarios and factors for the juvenile court to consider, a neglect determination requires a court to operate within a closed universe. Once the facts have been established, the juvenile court is limited to determining whether the statutory criteria for neglect have been met. Doing so is primarily a law-like endeavor. Thus, the court of appeals was correct to consider Mother's challenge to the neglect determination as presenting a law-like mixed question and review it nondeferentially.

## II. Petitioners Have Not Demonstrated That the Court of Appeals Erred in Reversing the Neglect Determination

¶29 The six statutory grounds for neglect are found in Utah Code section 80-1-102(58)(a), and for a court to find that a child has been neglected, it must determine that the situation satisfies one or more of these grounds. The neglect statute states that

> "[n]eglect" means action or inaction causing:
>
> (i) abandonment of a child . . . ;
>
> (ii) lack of proper parental care of a child by reason of the fault or habits of the parent, guardian, or custodian;
>
> (iii) failure or refusal of a parent, guardian, or custodian to provide proper or necessary subsistence

---

[40] *In re A.B.*, 2021 UT App 91, ¶ 10.

[41] *Id.*

[42] *Id.*

or medical care, or any other care necessary for the child's health, safety, morals, or well-being;

(iv) a child to be at risk of being neglected or abused because another child in the same home is neglected or abused;

(v) abandonment of a child through an unregulated child custody transfer under Section 78B-24-203; or

(vi) educational neglect.[43]

¶30 After examining the statutory grounds for neglect, the court of appeals reversed the juvenile court's neglect determination.[44] In doing so, the court of appeals engaged in a two-part analysis. First, it held that the juvenile court's legal conclusions—including the conclusion that A.B. was neglected "in the form of emotional maltreatment"—were not sufficiently connected to the neglect statute.[45] And second, it carefully went through each of the six statutory grounds for neglect and determined that the juvenile court's factual findings did not support any of those grounds.[46]

¶31 Aunt and Uncle claim the court of appeals erred in reversing the juvenile court's neglect determination, and they make two overarching arguments in support of that claim.[47] First, Aunt and

---

[43] UTAH CODE § 80-1-102(58)(a).

[44] *In re A.B.*, 2021 UT App 91, ¶¶ 11, 22, 498 P.3d 894.

[45] *Id.* ¶ 14 (citation omitted).

[46] *Id.* ¶¶ 15–21.

[47] The Guardian ad Litem also challenges the court of appeals' reversal of the neglect determination, but on two different grounds than Aunt and Uncle. First, the Guardian ad Litem claims the court of appeals' opinion "erroneously limit[ed] neglect to inaction and . . . erroneously limit[ed] neglect to present-day conduct." And second, the Guardian ad Litem argues that the court of appeals ignored several statutory definitions of neglect. We reject both of these arguments. In its opinion, the court of appeals did not define neglect as including only inaction, nor did it define neglect as including only present-day conduct. Instead, the court of appeals examined the juvenile court's legal conclusions, compared them to the neglect statute, considered the factual findings (which addressed both Mother's past and present-day conduct), and determined that the juvenile court's order did not support any of the statutory grounds

(continued . . .)

Uncle defend the juvenile court's determination that A.B. was neglected through emotional maltreatment and argue that a case the court of appeals relied on, *K.Y. v. Division of Child and Family Services*,[48] incorrectly held that emotional maltreatment does not meet the statutory definition of neglect. And second, Aunt and Uncle argue that the juvenile court's factual findings support several of the statutory neglect grounds.

¶32 We affirm. Aunt and Uncle's argument that emotional maltreatment fits within the neglect statute is waived because they conceded to the court of appeals that emotional maltreatment is not neglect. And we hold that Aunt and Uncle have not met their burden of persuasion to show that the court of appeals erred in holding that the juvenile court's factual findings do not support any of the statutory grounds for neglect.

*A. Aunt and Uncle Waived the Argument That Emotional Maltreatment Is Neglect*

¶33 In categorizing A.B.'s situation as neglect, the juvenile court held that A.B. had been neglected "in the form of emotional maltreatment." On appeal to this court, Aunt and Uncle defend the juvenile court's holding, arguing that emotional maltreatment fits within the statutory definition of neglect and claiming that *K.Y. v. Division of Child and Family Services* was incorrect for holding otherwise. But there is a fundamental problem with Aunt and Uncle's argument: they conceded to the court of appeals that emotional maltreatment is not neglect. Because of this concession, their arguments are waived.

¶34 After the juvenile court entered its order, Mother appealed to the court of appeals and argued, in part, that the legal conclusion that A.B. had been neglected in the form of emotional maltreatment was "per se erroneous." To support her argument, Mother cited the court of appeals' previous decision in *K.Y. v. Division of Child and Family Services*, which held that "the statutory definition of neglect

---

for neglect. *Id.* And the alleged statutory definitions of neglect the Guardian ad Litem says the court of appeals ignored do not come from the neglect statute but from the statutes governing termination of parental rights. The Guardian ad Litem does not argue why those statutes should apply outside of termination proceedings.

[48] 2010 UT App 335, 244 P.3d 399.

cannot be construed to include emotional maltreatment."[49] The *K.Y.* court reached this conclusion after determining that "the neglect definition adopted by the legislature focuses on inaction by the responsible party," and it held that maltreatment could not be considered neglect because that term is "concerned with inappropriate affirmative acts" and "is synonymous with abuse."[50]

¶35 In their briefing to the court of appeals, Aunt and Uncle conceded Mother's argument, stating, "Mother correctly notes that emotional maltreatment is abuse, not neglect." They also did not challenge *K.Y.*'s holding. And in its opinion, the court of appeals did not rule on whether emotional maltreatment constitutes neglect; it instead relied on Aunt and Uncle's concession and simply noted that the concession was in line with *K.Y.*[51]

¶36 But Aunt and Uncle make an about-face in their briefing to this court. They directly challenge *K.Y.*'s holding, claiming its definition of emotional maltreatment is too narrow and out-of-line with scientific research that they claim establishes that emotional maltreatment is a form of neglect. And they also argue that emotional maltreatment fits within the neglect statute as either a "lack of proper parental care" or a "failure or refusal . . . to provide proper or necessary subsistence, education or medical care, or any other care necessary for the child's health, safety, morals or well-being." Because Aunt and Uncle conceded to the court of appeals that emotional maltreatment is not neglect, these arguments are waived, and we decline to address them.

¶37 "Under our adversarial system, the parties have the duty to identify legal issues and bring arguments," and "[i]f the parties fail to raise an issue in . . . the . . . appellate court, they risk losing the opportunity to have the court address that issue."[52] And we have held that "[i]ssues not raised in the court of appeals may not be raised on certiorari unless the issue arose for the first time out of the court of appeals' decision."[53] By conceding to the court of appeals

---

[49] *Id.* ¶ 20.

[50] *Id.* ¶ 18 (citations omitted).

[51] *In re A.B.*, 2021 UT App 91, ¶ 14 (citation omitted).

[52] *State v. Johnson*, 2017 UT 76, ¶ 14, 416 P.3d 443.

[53] *DeBry v. Noble*, 889 P.2d 428, 444 (Utah 1995); *see also State v. Pierce*, 2022 UT 22, ¶ 29 n.29, 511 P.3d 1164 (concluding that an

(continued . . .)

that emotional maltreatment is not neglect and accepting *K.Y.*'s holding, Aunt and Uncle failed to raise the issue of whether emotional maltreatment can constitute neglect. And their arguments do not relate to an issue that arose for the first time out of the court of appeals' decision. This is so because Mother argued in her opening brief to the court of appeals that emotional maltreatment is not neglect, and she cited *K.Y.*'s holding for support. Aunt and Uncle had an opportunity to challenge Mother's argument and caselaw in their response, but they chose to concede instead, and the court of appeals relied on their concession. So their arguments are waived, and we decline to address them.

*B. Aunt and Uncle Have Not Met Their Burden of Persuasion to Show That the Court of Appeals Erred*

¶38  In its opinion, the court of appeals analyzed each of the six statutory grounds for neglect and concluded that the juvenile court's factual findings do not support any of those grounds.[54] On appeal, Aunt and Uncle challenge only the court of appeals' holdings that the factual findings do not support the neglect statute's provisions regarding "lack of proper parental care" and a "failure or refusal . . . to provide proper or necessary subsistence or medical care, or any other care necessary for the child's health, safety, morals, or well-being." We affirm the court of appeals because Aunt and Uncle have failed to meet their burden of persuasion to show that the court of appeals erred.

¶39  Under our appellate rules and caselaw, an appellant has the burden to "explain, with reasoned analysis supported by citations to legal authority and the record, why the [appellant] should prevail on appeal."[55] "An appellant bears the burden of persuasion on appeal,"[56] and this burden includes "engag[ing] with and respond[ing] to the grounds for the decision [the appellant] is challenging on appeal."[57] And when review of a lower court's

---

argument had been waived because the appellant "never raised th[e] issue before the court of appeals").

[54] *In re A.B.*, 2021 UT App 91, ¶¶ 15–21.

[55] UTAH R. APP. P. 24(a)(8).

[56] *Utah Dep't of Transp. v. Coalt, Inc.*, 2020 UT 58, ¶ 45, 472 P.3d 942 (citation omitted).

[57] *UMIA Ins., Inc. v. Saltz*, 2022 UT 21, ¶ 64, 515 P.3d 406 (citations omitted).

decision includes an issue of statutory interpretation, part of an appellant's burden of persuasion includes analyzing the statute's meaning.[58]

¶40 The court of appeals determined that the juvenile court's factual findings did not support neglect by a "lack of proper parental care" or by a "failure or refusal . . . to provide proper or necessary subsistence or medical care, or any other care necessary for the child's health, safety, morals, or well-being."[59] Regarding "lack of proper parental care," although the court of appeals acknowledged that "it would be inaccurate and insensitive to suggest that the interactions between Mother and [A.B.] approached ideal," it determined that "the record . . . suggests that [A.B.] received proper parental care, even if not always at Mother's hand."[60] And when analyzing neglect by a parent's "failure or refusal . . . to provide proper or necessary subsistence or medical care, or any other care necessary for the child's health, safety, morals, or well-being," the court of appeals held that "the statute's plain language relates only to a parent's refusal to provide care—it says nothing about a parent's refusal to reimburse another caretaker for providing the care."[61] It then determined that Mother's conduct did not fall within the statutory definition because she "never refused to provide care but refused only to reimburse Aunt and Uncle for providing that care."[62]

¶41 Aunt and Uncle have failed to satisfy their burden of persuasion to show that the court of appeals erred in these two

---

[58] *See Utah State Tax Comm'n v. See's Candies, Inc.*, 2018 UT 57, ¶ 20 n.8, 435 P.3d 147 (concluding that an appellant "failed to carry its burden of persuasion on appeal" because the appellant had "not given [the court] what [it] would need to interpret [the statutory] language"); *see also Tobler v. Tobler*, 2014 UT App 239, ¶ 42, 337 P.3d 296 (concluding that an appellant failed to meet his burden of persuasion on appeal when he did not provide "a supported argument for his preferred interpretation of [a statute] based on general principles of statutory interpretation").

[59] *In re A.B.*, 2021 UT App 91, ¶¶ 19–20 (citation omitted) (internal quotation marks omitted).

[60] *Id.* ¶ 20.

[61] *Id.* ¶ 19.

[62] *Id.*

holdings. Aunt and Uncle had a burden to "shed light"[63] on the meaning of these statutory provisions—particularly because these provisions could potentially support a wide range of possible meanings. For instance, "lack of proper parental care" could potentially refer to any parental conduct that falls short of ideal, or it might refer only to parental conduct that causes a child to lack basic necessities. And the phrase "failure or refusal . . . to provide . . . any other care necessary for the child's health, safety, morals, or well-being" is similarly vague and conducive to a variety of reasonable interpretations.

¶42 But Aunt and Uncle have "not given us what we would need to interpret this language."[64] Instead, they merely list several of the juvenile court's factual findings and conclude, without analysis, that these findings support a determination that A.B. was neglected by a "lack of proper parental care" or by Mother's "failure or refusal . . . to provide proper or necessary . . . care." They do not engage with the statute's text or provide any argument for what these provisions mean. Because Aunt and Uncle do not provide any analysis of the neglect statute's meaning, they have not given us what we would need to determine whether the court of appeals erred and have accordingly "failed to carry [their] burden of persuasion on appeal."[65]

¶43 In addition to their failure to shed light on the meaning of the statute, Aunt and Uncle have also failed to engage with key aspects of the court of appeals' reasoning. For instance, Aunt and Uncle do not mention the court of appeals' determination that the statute's language regarding a "failure or refusal . . . to provide proper or necessary subsistence or medical care" "says nothing about a parent's refusal to reimburse another caretaker for providing the care."[66] And Aunt and Uncle do not acknowledge the court of appeals' analysis regarding "lack of proper parental care," in which it determined that "the record . . . suggests that [A.B.] received

---

[63] *See's Candies*, 2018 UT 57, ¶ 20 n.8 (concluding that an appellant failed to meet its burden of persuasion when it had "done little to shed light on the statute's meaning").

[64] *Id.*

[65] *Id.*

[66] *In re A.B.*, 2021 UT App 91, ¶ 19 (citation omitted) (internal quotation marks omitted).

proper parental care, even if not always at Mother's hand."[67] Because Aunt and Uncle have failed to "engage with and respond to the grounds for the [court of appeals'] decision,"[68] they have failed to meet their burden of persuasion on appeal. We accordingly affirm the court of appeals' determination that the juvenile court's factual findings do not support any of the statutory neglect grounds.

## III. The Court of Appeals Did Not Err in Declining to Affirm on the Alternative Ground of Abuse

¶44 In addition to arguing the court of appeals erred by reversing the juvenile court's neglect determination, Petitioners also argue the court of appeals erred by declining to affirm the juvenile court's order on the alternative ground that A.B. was abused. But because the juvenile court's findings do not clearly rise to the level of "abuse" as defined by statute, we hold that the court of appeals did not abuse its discretion in declining to affirm the juvenile court's order on this basis.

¶45 An appellate court has "discretion to affirm [a] judgment on an alternative ground if it is apparent in the record."[69] "[T]o be apparent," "[t]he record must contain sufficient and uncontroverted evidence supporting the ground or theory to place a person of ordinary intelligence on notice that the prevailing party may rely thereon on appeal."[70] And "not only must the alternative ground be apparent on the record, it must also be sustainable by the factual findings of the trial court."[71] That means the appellate courts are "limited to the findings of fact made by the trial court and may not

---

[67] *Id.* ¶ 20.

[68] *UMIA Ins.*, 2022 UT 21, ¶ 64 (citations omitted).

[69] *Olguin v. Anderton*, 2019 UT 73, ¶ 20, 456 P.3d 760 (alteration in original) (citation omitted) (internal quotation marks omitted); *see also Madsen v. Washington Mut. Bank fsb*, 2008 UT 69, ¶ 26, 199 P.3d 898 ("When reviewing a decision made on one ground, we have the *discretion* to affirm the judgment on an alternative ground if it is apparent in the record.").

[70] *Olguin*, 2019 UT 73, ¶ 20 (second alteration in original) (citation omitted) (internal quotation marks omitted).

[71] *State v. Topanotes*, 2003 UT 30, ¶ 9, 76 P.3d 1159.

find new facts or reweigh the evidence in light of the . . . alternate ground."[72]

¶46 Aunt and Uncle refer to the trial transcript, asserting that "the issue of emotional abuse was central to the trial," having been addressed throughout the proceedings and in closing argument. And they argue that because the issue of Mother's alleged emotional abuse was so prevalent, the juvenile court must have inadvertently erred when it described the conduct as emotional "maltreatment" in its order.

¶47 Like the court of appeals, we doubt the juvenile court meant "emotional abuse"—at least as that term is defined by the statute—when it concluded Mother had engaged in "emotional maltreatment."[73] The juvenile court rested its custody determination on the ground of neglect, concluding that A.B. had "been neglected by her mother in the form of emotional maltreatment," among other ways. Had the court found that Mother abused A.B., it most likely would have said so directly. There would have been no reason to frame such abuse in terms of neglect.[74]

¶48 We also conclude that the court of appeals did not err in stating that the juvenile court's factual findings do not rise to the level of abuse under the relevant statute.[75] And because the court of appeals was "limited to the findings of fact made by the [juvenile] court and [could] not find new facts or reweigh the evidence," we,

---

[72] *Bailey v. Bayles*, 2002 UT 58, ¶ 20, 52 P.3d 1158.

[73] *See In re A.B.*, 2021 UT App 91, ¶ 14 n.3, 498 P.3d 894 (reasoning that because the term "abuse" is "such a significant term of art under the statute," "a juvenile court's failure to use this word . . . cannot reasonably be viewed as a mere typographical error").

[74] The term "emotional abuse" does appear once in the juvenile court's findings. The court described an exchange between A.B. and Mother in which the latter said that "a lot of people will get hurt" if A.B. did not tell Aunt, Uncle, and her Guardian ad Litem that she wanted to go home with Mother. The court called this an "emotionally abusive conversation." But identifying one conversation as "emotionally abusive" is not the same as deciding A.B. was abused under the statute.

[75] *See In re A.B.*, 2021 UT App 91, ¶ 14 n.3.

too, look only to the juvenile court's findings to determine whether they constitute abuse.[76]

¶49 In relevant part, "abuse" is defined as "nonaccidental harm of a child" or "threatened harm of a child."[77] And "harm," in turn, is defined most relevantly as "emotional damage that results in a serious impairment in the child's growth, development, behavior, or psychological functioning."[78] The juvenile court's findings do not clearly show that A.B. suffered "serious impairment" in her "growth, development, behavior, or psychological functioning."

¶50 The juvenile court did make findings related to A.B.'s behavior and psychological functioning. With respect to her behavior, the court cited testimony that A.B., like Mother, throws things when they argue and that she has "thrash[ed] out" "several times." (It is unclear what exactly was meant by "thrashing out.") But on this factual record, it is not apparent that A.B.'s behavior goes far beyond that of a typical, non-abused child.

¶51 As to A.B.'s psychological functioning, the juvenile court's findings are admittedly more troubling. But we still conclude that those findings did not require the court of appeals to affirm on the alternate ground of abuse. The juvenile court pointed to testimony that A.B. had been suicidal at some point and found that she arrived at Aunt and Uncle's home "depressed and afraid, with very little self-confidence." It also referred to testimony that A.B. became "very depressed and sad after visits with her mother." The court concluded that Mother's emotional maltreatment "caused [A.B.] to be insecure, afraid and emotionally disturbed."

¶52 We in no way disregard the troubling nature of these findings. But they are not so "sufficient and uncontroverted" for us to conclude that the court of appeals abused its discretion in declining to affirm the juvenile court's order on the ground of abuse.[79]

**Conclusion**

¶53 Petitioners' three arguments that the court of appeals erred have all fallen short. First, we agree with the court of appeals that

---

[76] *See Bailey*, 2002 UT 58, ¶ 20.

[77] UTAH CODE § 80-1-102(1)(a)(i)(A), (B).

[78] *Id.* § 80-1-102(37)(b).

[79] *See Olguin*, 2019 UT 73, ¶ 20 (citation omitted).

nondeferential review was appropriate when reviewing the juvenile court's neglect determination because it was a law-like mixed question of fact and law centered around statutory interpretation. Second, Petitioners have not convinced us that the court of appeals erred in reversing the juvenile court's neglect determination. Petitioners relied partially on an argument they had waived before the court of appeals, and they failed to meet their burden of persuasion on appeal because they did not adequately engage with the statutory text or the court of appeals' reasoning. And third, Petitioners have not demonstrated that the court of appeals abused its discretion by choosing not to rule on the alternative ground of abuse. We affirm.

---